IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,    :
    :
    Plaintiff,    :
    :
        *v.*    :    CIVIL ACTION NO.:
    :
$319,113.11 IN FUNDS SEIZED    :
FROM UNITED COMMUNITY    :
BANK ACCOUNT NUMBER    :
XXXXXX1408 HELD IN THE NAME    :
OF FLAME TRUCKING; $14,169.57    :
IN FUNDS SEIZED FROM NAVY    :
FEDERAL CREDIT UNION BANK    :
ACCOUNT NUMBER XXXXXX0090    :
HELD IN THE NAME OF MAURICE    :
FAYNE; $169,650.90 IN FUNDS    :
SEIZED FROM WELLS FARGO    :
BANK ACCOUNT NUMBER    :
XXXXXX0467 HELD IN THE NAME    :
OF CAWANZA WILKINS; $79,482.00    :
IN UNITED STATES CURRENCY;    :
MISCELLANEOUS JEWELRY;    :
$15,195.62 IN FUNDS SEIZED FROM    :
NAVY FEDERAL CREDIT UNION    :
BANK ACCOUNT NUMBER    :
XXXXXX1000 HELD IN THE NAME    :
OF MAURICE FAYNE; $136,000.00    :
IN FUNDS; ONE GREAT DANE,    :
VIN 1GRAA062XFW703501; ONE    :
GREAT DANE, VIN    :
1GRAA0620FW703748; ONE GREAT    :
DANE, VIN 1GRAA0629FW703750;    :
ONE GREAT DANE, VIN    :

1

1GRAA0626FW703754; ONE GREAT    :
DANE, VIN 1GRAA0621FW703743;
ONE GREAT DANE, VIN
1GRAA0621FW703760;

    Defendants.

## VERIFIED COMPLAINT FOR FORFEITURE

COMES NOW, the United States of America, Plaintiff in the above-styled

civil action, pursuant to 18 U.S.C. § 918(a)(1)(A) and 18 U.S.C. § 981(a)(1)(C) and

files this verified Complaint for Forfeiture, showing the Court as follows:

### I.    INTRODUCTION

1.    On or about May 7, 2020, agents with the Federal Bureau of Investigation

("FBI") seized $319,113.11 in funds from United Community Bank account

number XXXXXX1408 held in the name of Flame Trucking ("Defendant

$319,113.11"), located at 177 Georgia 515, Blairsville, Georgia, a place within

the jurisdiction and venue of this Court.

2.    On or about May 8, 2020, FBI agents seized $14,169.57 in funds from Navy

Federal Credit Union bank account number XXXXXX0090 held in the name

of Maurice Fayne ("Defendant $14,169.57"), located at 2470 Briarcliff Road,

Atlanta, Georgia, a place within the jurisdiction and venue of this Court.

That same day, FBI agents also seized $169,650.90 in funds from Wells Fargo

Bank account number XXXXXX0467 held in the name of Cawanza Wilkins ("Defendant $169,650.90"), located at 2725 Clairmont Road, NE, Atlanta, Georgia, a place within the jurisdiction and venue of this Court.

3.    On or about May 11, 2020, FBI agents seized $79,482.00 in United States Currency from Maurice Fayne's residence and Flame Trucking's principal office ("Defendant $79,482.00"), located at 4029 Mountain Side Trail, Dacula, Georgia, a place within the jurisdiction and venue of this Court.  This same day, FBI agents also seized miscellaneous jewelry from Maurice Fayne's residence and Flame Trucking's principal office ("Defendant Jewelry"), located at 4029 Mountain Side Trail, Dacula, Georgia, a place within the jurisdiction and venue of this Court.

4.    On or about May 14, 2020, FBI agents seized $15,195.62 in funds from Navy Federal Credit Union bank account number XXXXXX1000 held in the name of Maurice Fayne ("Defendant $15,195.62"), located at 2470 Briarcliff Road, Atlanta, Georgia, a place within the jurisdiction and venue of this Court. That same day, FBI agents seized $136,000.00 in funds ("Defendant $136,000.00") that were wire transferred by, or on behalf of, Maurice Fayne to Luxury Lease Partners on or about May 1, 2020 as a down payment to lease a 2019 Rolls-Royce Wraith, VIN: SCA665C53KUX87297.  Agents seized

the Defendant $136,000.00 from 3000 Flowers Road, South, Atlanta, Georgia,
a place within the jurisdiction and venue of this Court.

5.      On or about June 5, 2020 FBI agents seized the following vehicles from 3924
E. Broadway, Little Rock, Arkansas:

a)  2015 Great Dane, VIN 1GRAA062XFW703501;

b)  2015 Great Dane, VIN 1GRAA0620FW703748;

c)  2015 Great Dane, VIN 1GRAA0629FW703750;

d)  2015 Great Dane, VIN 1GRAA0626FW703754;

e)  2015 Great Dane, VIN 1GRAA0621FW703743; and

f)  2015 Great Dane, VIN 1GRAA0621FW703760 ("Defendant Vehicles").

6.      Defendant $319,113.11, Defendant $14,169.57, Defendant $169,650.90,
Defendant $79,482.00, Defendant $15,195.62, Defendant $136,000.00,
Defendant Jewelry, and Defendant Vehicles (collectively, "the Defendant
Properties") are presently within the jurisdiction of this Court and are being
held by the United States Marshals Service in a secure location.

7.      The Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 1345 and
1355.

8.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1395.

4

## II. FORFEITURE STATUTES

9.   Pursuant to 18 U.S.C. § 1344, it is unlawful for any person to knowingly execute or attempt to execute a scheme and artifice to defraud a financial institution, or to obtain moneys and funds owned by and under the custody and control of a financial institution by means of materially false and fraudulent pretenses, representations, and promises.

10.  Pursuant to 18 U.S.C. § 981(a)(1)(C), any property which constitutes or was derived from proceeds traceable to a violation of 18 U.S.C. § 1344 is subject to forfeiture to the United States.

11.  18 U.S.C. § 1956(c)(7) defines, in relevant part, a "specified unlawful activity" as any act or activity constituting an offense listed in 18 U.S.C. § 1961(1).

12.  18 U.S.C. § 1961(1) includes, as part of the list of offenses, 18 U.S.C. § 1343 (wire fraud) and 18 U.S.C. § 1344 (bank fraud).

13.  Pursuant to 18 U.S.C. § 1956(a)(1)(B)(i), it is unlawful for any person to knowingly conduct or attempt to conduct a financial transaction involving proceeds of a specified unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the proceeds of specified unlawful activity.

5

14. Pursuant to 18 U.S.C. §1957, it is a crime to engage or attempt to engage in a monetary transaction involving criminal derived property having a value greater than $10,000, knowing that the property was derived from specified unlawful activity.

15. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. § 1956 and/or 1957 is subject to forfeiture to the United States.

### III. BASIS FOR FORFEITURE

### The Paycheck Protection Program

16. On March 29, 2020, the Coronavirus Aid, Relief, and Economic Security ("CARES") Act was enacted into federal law.

17. The CARES Act was designed to provide emergency financial assistance to millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic.

18. One source of relief provided by the CARES Act was the authorization of up to $349 billion in Small Business Administration ("SBA")-guaranteed forgivable loans to small businesses through the Paycheck Protection Program ("PPP").

19. Over $300 billion in additional PPP funding was authorized by Congress in

April 2020.

20.    In order to obtain a PPP loan, a qualifying business must submit a PPP loan application, which must be signed by an authorized representative of the business.

21.    The PPP loan application requires the business, through its authorized representative, to acknowledge the program rules and make certain affirmative certifications in order to be eligible to obtain the PPP loan.

22.    In the PPP loan application, the small business, through its authorized representative, must state, among other things, its average monthly payroll expenses and number of employees.

23.    These figures are used to calculate the amount of money the small business is eligible to receive under the PPP.

24.    In addition, businesses applying for a PPP loan must provide documentation showing their payroll expenses.

25.    A business's PPP loan application is received and processed, in the first instance, by a participating financial institution then transmitted, for further review, to the Small Business Administration ("SBA") to assess the applicant's eligibility.

26.    If a PPP loan application is approved, the participating financial institution

funds the PPP loan using its own monies, which are 100% guaranteed by SBA.

27. PPP loan proceeds must be used by the business on certain permissible expenses—payroll costs, interest on mortgages, rent, and utilities.

### Maurice Fayne, Flame Trucking, and Flame Trucking's PPP Loan Application

28. Maurice Fayne, a/k/a "Arkansas Mo" ("Fayne") resides at 4029 Mountain Side Trail, Dacula, Georgia 30019.

29. According to records on file with the Georgia Secretary of State, Flame Trucking was incorporated in the State of Georgia on April 4, 2019.

30. Further, the records indicated that Flame Trucking's principal office is also located at 4029 Mountain Side Trail, Dacula, Georgia 30019.

31. On or about April 15, 2020, Fayne signed and submitted to United Community Bank a PPP loan application in the name of Flame Trucking.

32. United Community Bank is a federally insured financial institution and has its headquarters in Blairsville, Georgia.

33. United Community Bank is an approved SBA lender that participated in the PPP.

34. Fayne, on behalf of Flame Trucking, sought a PPP loan in the amount of

$3,725,500.00.

35. In his PPP loan application, Fayne represented that he was the sole owner and CEO of Flame Trucking.

36. Fayne further represented to United Community Bank that Flame Trucking had 107 employees.

37. He also represented that Flame Trucking had an average monthly payroll of $1,490,200.00.

38. In Flame Trucking's PPP loan application, Fayne certified that the loan proceeds would be used to "retain workers and maintain payroll or make mortgage interest payments, lease payments, and utility payments, as specified under the Paycheck Protection Program Rule."

39. Fayne also certified that he understood he could be prosecuted for fraud if the PPP loan proceeds were "knowingly used for unauthorized purposes."

40. In support of his assertion that Flame Trucking had an average monthly payroll of $1,490,200.00, Fayne sent an email to United Community Bank, to which he attached what he represented to be October, November, and December 2019 bank statements for Flame Trucking's account at Arvest Bank.

41. However, according to Arvest Bank, that account was closed on September

17, 2019.

42. Investigators provided Arvest Bank with copies of the purported October, November, and December 2019 bank statements Fayne submitted to United Community Bank as part of Flame Trucking's PPP loan application.

43. Arvest Bank reviewed those documents and determined that the documents were not genuine.

44. Originally, United Community agreed to fully fund Flame Trucking's PPP loan, in the amount of $3,725,500.00.

45. However, PPP regulations allowed United Community Bank to loan Flame Trucking only $2,045,800.00.

46. The loan amount was adjusted to comply with PPP regulations.

47. On April 22, 2020, United Community Bank transferred $2,045,800.00 in PPP loan proceeds to Fayne's United Community Bank account number XXXXXX1408, which was held in the name of Flame Trucking ("UCB Account 1408").

### Fayne's Fraudulent Use of PPP Loan Proceeds in Wire Fraud Scheme

48. Investigation of Fayne showed that he held out to others that Flame Trucking was a profitable trucking business.

49.  However, Flame Trucking did not generate enough revenue to cover its expenses.

50.  Because Flame Trucking repeatedly failed to pay its bills on time, it was hit with multiple tax liens, civil lawsuits, and judgments.

51.  Fayne, personally and through middlemen, including T.V., D.J., and M.S., caused approximately 20 individuals to invest over $5 million in Fayne's trucking business.

52.  Fayne and his middlemen made false statements to investors.

53.  They also concealed material facts from investors and provided them with fraudulent documents.

54.  Fayne and his middlemen promised investors that Flame Trucking would use their funds to purchase and operate trucks.

55.  Instead, Fayne used the investors' money to pay his personal debts and expenses, and to fund a lifestyle for himself he could not otherwise afford.

56.  For example, during the course of this scheme, Fayne transferred more than $5 million to the Choctaw Casino and Resort.

57.  He transferred the funds to cover his personal gambling and entertainment expenses.

58.  Fayne and his middlemen also promised investors that they would be

repaid from profits generated by Flame Trucking.

59.     However, because Fayne squandered the investors' money, Flame Trucking never generated enough revenue to repay the investors.

60.     To hide that fact from the investors, and to give Flame Trucking an aura of legitimacy, Fayne used the investors' own money to pay some of the "make-believe profits."

61.     When investors became suspicious that Fayne and his middlemen were not being truthful, Fayne and his middlemen made excuses to lull investors into a false sense of security and delay their complaints to law enforcement.

62.     In or around mid-March 2020, Fayne contacted T.V. and stated that he was in the process of obtaining a PPP loan.

63.     Fayne stated that he planned to use some of the PPP loan proceeds to make payments related to the wire fraud scheme.

64.     After receiving the PPP loan proceeds from United Community Bank, Fayne wire transferred PPP loan proceeds to his middlemen.

65.     On or about April 23, 2020, wire transferred $175,000 from UCB Account 1408 to Navy Federal Credit Union account number XXXXXX6082, held in the name of T.V.

66.     On or about April 24, 2020, Fayne wire transferred $30,000 from UCB

Account 1408 to JP Morgan Chase Bank account number XXXXXX0180, held in the name of D.J.

67. On or about May 1, 2020, Fayne wire transferred $25,000 from UCB Account 1408 to Bank of America account number XXXXXX2851, held in the name of M.S.

## Fayne's Fraudulent Use of PPP Loan Proceeds

68. On or about April 22, 2020, Cawanza Wilkins ("Wilkins") created an Arkansas limited liability company called C.R. Wilkins Trucking, LLC ("C.R. Wilkins Trucking").

69. On or about April 23, 2020, on behalf of C.R. Wilkins Trucking, Wilkins signed a contract with TransAm Trucking, Inc., and its affiliated entity, Olathe Noble Equipment Leasing, Inc., d/b/a ONE Leasing, to purchase eight Kenworth T-680 trucks.

70. That same day, Fayne wire transferred $368,000.00 from the PPP loan proceeds in UCB Account 1408 to UMB Bank Account XXXXXX6105, held in the name of TransAm Trucking.

71. Fayne transferred those funds to purchase for Wilkins and C.R. Wilkins Trucking the eight Kenworth trucks.

72. According to records from TransAm Trucking, Fayne purchased the eight

Kenworth T-680 trucks.

73. The records also showed that Fayne held himself out to be the owner of C.R. Wilkins Trucking.

74. That same day, April 23, 2020, on behalf of C.R. Wilkins Trucking, Wilkins signed a contract to purchase from Great Dane LLC six Great Dane trailers:

   a) 2015 Great Dane, VIN 1GRAA062XFW703501;

   b) 2015 Great Dane, VIN 1GRAA0620FW703748;

   c) 2015 Great Dane, VIN 1GRAA0629FW703750;

   d) 2015 Great Dane, VIN 1GRAA0626FW703754;

   e) 2015 Great Dane, VIN 1GRAA0621FW703743; and

   f) 2015 Great Dane, VIN 1GRAA0621FW703760 ("Defendant Vehicles").

75. According to records from Great Dane LLC, Fayne negotiated and purchased the Defendant Vehicles.

76. Further, Fayne claimed that he had recently purchased Flame Trucking.

77. That same day, April 23, 2020, Fayne wire transferred $350,000 from the PPP loan proceeds in UCB Account 1408 to Wells Fargo Bank account XXXXXX0467 ("WF Account 0467"), held in the name of Wilkins.

78. According to the wire detail, Fayne told United Community Bank that he sent this $350,000 to Wilkins so that Wilkins could pay "payroll" for Flame

14

Trucking.

79.   However, Wilkins told a Wells Fargo investigator that she was never an employee of Flame Trucking.

80.   She also told the investigator that Fayne is her "brother."

81.   Wilkins further stated that, after receiving the $350,000 wire transfer from Fayne, she disbursed that money according to Fayne's directions.

82.   That same day, April 23, 2020, Fayne wire transferred $175,000 from UCB Account 1408 to a Navy Federal Credit Union Account 6082.

83.   On or about April 28, 2020, Wilkins used part of the $350,000 in PPP loan proceeds that she received from Fayne to send an $84,000 wire to a jewelry store in Duluth, Georgia.

84.   According to the wire detail, Wilkins told Wells Fargo that this payment was for "investment."

85.   The true purpose of that wire, however, was to pay for three pieces of custom-made jewelry, to be worn by Fayne, specifically:

   a) one custom-made 18-karat Rolex 41mm Presidential watch, serial number 5636S3S8, with diamonds, which sold for $52,000;
   b) one 10-karat custom-made Cuban bracelet with 34.75 carats of diamonds, which sold for $24,500; and
   c) one 14-karat custom-made ring with 5.73 carats of diamonds, which sold for $3,750.

86. Payments for personal purchases such as jewelry are not authorized uses of PPP loan proceeds.

87. On or about April 28, 2020, Fayne wire transferred $90,000 from UCB Account 1408 to Navy Federal Credit Union Account XXXXXX0090 ("NFCU Account 0090"), an account held in Fayne's name.

88. That same day, Fayne transferred $25,000 from NFCU Account 0090 into his personal savings account Navy Federal Credit Union Account XXXXXX1000 ("NFCU Account 1000").

89. On or about April 30, 2020, Wilkins used part of the $350,000 in PPP loan proceeds that she received from Fayne to send a $40,000 wire transfer from her Wells Fargo bank account to an account at Arkansas Federal Credit Union, held in the name of S.T.

90. According to the wire detail, Wilkins told Wells Fargo that this payment was for "child support completion."

91. When S.T. was later interviewed by the FBI, she stated that Fayne was father of her granddaughter.

92. S.T. also confirmed that the purpose of the $40,000 wire transfer she received from Wilkins was to pay Fayne's past-due child support.

93. Payments for child support are not an authorized use of PPP loan proceeds.

94. Navy Federal Credit Union bank records also showed that, on or about May 1, 2020, Fayne wire transferred an additional $142,000 into NFCU Account 0090.

95. That same day, Fayne wire transferred $136,000 to Luxury Lease Partners ("Defendant $136,000").

96. Fayne transferred the Defendant $136,000 to the lease company as a down payment on a 2019 Rolls-Royce Wraith.

97. Payments for personal purchases such as vehicles are not authorized uses of PPP loan proceeds.

98. On or about May 6, 2020, Fayne transferred $10,000 of the funds in NFCU Account 1000 back into NFCU Account 0090.

99. It was further discovered that only $15,195.92 remained in NFCU Account 1000.

100. The bank then froze NFCU Account 1000 after being served with the seizure warrant for NFCU Account 0090.

101. By the time agents executed the seizure warrant on or about May 8, 2020, only $14,169 of the $232,000 in PPP funds transferred from UCB Account 1408 remained into NFCU Account 0090.

**Fayne and Wilkins's Inteviews with Federal Law Enforcement**

102. On or about May 6, 2020, Fayne was interviewed by federal agents.

103. Fayne stated that all money obtained was used to fund payroll and pay lease payments or truck expenses.

104. Fayne also stated that no money was used for personal purposes.

105. The following day, May 7, 2020, federal agents interviewed Wilkins.

106. Wilkins stated that she was not an employee of Flame Trucking.

107. She claimed that Fayne was her "godbrother."

108. Wilkins told agents that, prior to receiving the $350,000 wire transfer from Flame Trucking on April 23, 2020, Fayne told Wilkins that he (Fayne) had received a COVID-19 loan from the U.S. Government and was sending her some of it so that she could handle payroll for him when he was not around.

109. After receiving the $350,000 wire transfer from Fayne, Wilkins stated that she made certain wire transfers for payroll at the direction of Fayne, including an $84,000 wire to Status Jewelers in Duluth, Georgia.

110. She also stated that, at the direction of Fayne, she made a $40,000 wire transfer for to S.T. at Arkansas Federal Credit Union.

111. According to Wilkins, Fayne told Wilkins both of these wire transactions were for payroll purposes.

## Execution of Federal Search Warrant at Fayne's Residence

112.   On or about May 11, 2020, federal agents executed a search warrant at
       Fayne's residence, which is also the principal office of Flame Trucking.

113.   During the search, agents seized the jewelry purchased with PPP loan
       proceeds.

114.   Fayne admitted that he purchased at least some of the jewelry with PPP loan
       proceeds.

115.   Fayne told the agents that he believed he had the right to use part of the PPP
       loan proceeds for "other business purposes" and for "working capital."

116.   Fayne also stated that he believed the jewelry would increase in value
       because he would be wearing it, which would make it more valuable.

117.   During the search, agents found a bag containing exactly $70,000 in U.S.
       currency.

118.   Most of the money was bundled in $2,000 stacks and separated with paper
       wrappers bearing the name "United Community Bank" and stamped "April
       23, 2020" or "April 24, 2020."

119.   Two bundles of money, each containing $10,000, were in envelopes bearing
       the name "Navy Federal Credit Union."

120.   When asked where he got this cash, Fayne stated that it was his "personal

money."

121.  Agents also seized $9,400 from the pockets of the clothes Fayne was wearing.

122.  In Fayne's garage, Agents found a 2019 Rolls-Royce Wraith, VIN: SCA665C53KUX87297, which still had a temporary dealer tag on it.

123.  Agents asked Fayne whether he used any of the PPP loan proceeds to purchase that vehicle, and Fayne said: "Kinda, sorta, not really."

124.  On or about May 13, 2020, Luxury Lease Partners confirmed that the Defendant $136,000 wire transfer was made from NFCU Account 0090.

125.  On or about May 13, 2020, Fayne was arrested on a Criminal Complaint, which charged him with bank fraud.

126.  On or about June 24, 2020, a federal Grand Jury sitting in the Northern District of Georgia charged Fayne with three counts of wire fraud, one count of bank fraud, one count of false statement to a federally-insured bank, ten counts of money laundering in violation of 18 U.S.C. § 1956, and three counts of money laundering in violation of 18 U.S.C. § 1957.

127.  On or about August 28, 2020, Fayne filed a claim with the FBI contending that he is the owner of Defendant $319,113.11, Defendant $14,169.57, Defendant $169,650.90, Defendant $79,482.00, Defendant $15,195.62,

Defendant $136,000.00, Defendant Jewelry, and Defendant Vehicles (collectively "Defendant Properties").

128.    The Defendant Properties are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C), on the grounds that they are properties, which constitute or were derived from proceeds traceable to violations of 18 U.S.C. §§ 1343 and 1344.

129.    The Defendant Properties are also subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A), on the grounds that they are properties, real or personal, involved in or traceable to a transaction or attempted transaction in violation of 18 U.S.C. § 1956 and/or 1957.

WHEREFORE, Plaintiff prays:

(1)     that the Court forfeit the Defendant Properties to the United States of

America;

(2)     that the Court award Plaintiff the costs of this action; and

(3)     that Plaintiff have such other and further relief as the Court deems

just and proper under the facts and circumstances of this case.

This  26th  day of November 2020.

Respectfully submitted,

BYUNG J. PAK
UNITED STATES ATTORNEY

*Radka Nations*

RADKA T. NATIONS
ASSISTANT UNITED STATES ATTORNEY
GEORGIA BAR NO. 618248
75 TED TURNER DRIVE, S.W.
SUITE 600
ATLANTA, GA 30303
TELEPHONE: (404) 581-6000
RADKA.NATIONS2@USDOJ.GOV

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA,    :
    :
    Plaintiff,    :
    :
    *v.*    :    CIVIL ACTION NO.:
    :
$319,113.11 IN FUNDS SEIZED    :
FROM UNITED COMMUNITY    :
BANK ACCOUNT NUMBER    :
XXXXXX1408 HELD IN THE NAME    :
OF FLAME TRUCKING; $14,169.57    :
IN FUNDS SEIZED FROM NAVY    :
FEDERAL CREDIT UNION BANK    :
ACCOUNT NUMBER XXXXXX0090    :
HELD IN THE NAME OF MAURICE    :
FAYNE; $169,650.90 IN FUNDS    :
SEIZED FROM WELLS FARGO    :
BANK ACCOUNT NUMBER    :
XXXXXX0467 HELD IN THE NAME    :
OF CAWANZA WILKINS; $79,482.00    :
IN UNITED STATES CURRENCY;    :
MISCELLANEOUS JEWELRY;    :
$15,195.62 IN FUNDS SEIZED FROM    :
NAVY FEDERAL CREDIT UNION    :
BANK ACCOUNT NUMBER    :
XXXXXX1000 HELD IN THE NAME    :
OF MAURICE FAYNE; $136,000.00    :
IN FUNDS; ONE GREAT DANE,    :
VIN 1GRAA062XFW703501; ONE    :
GREAT DANE, VIN    :
1GRAA0620FW703748; ONE GREAT    :
DANE, VIN 1GRAA0629FW703750;    :

ONE GREAT DANE, VIN                    :
1GRAA0626FW703754; ONE GREAT    :
DANE, VIN 1GRAA0621FW703743;
ONE GREAT DANE, VIN
1GRAA0621FW703760;

   Defendants

## **VERIFICATION OF COMPLAINT FOR FORFEITURE**

I, Special Agent Monika Staeva, have read the Complaint for Forfeiture in this action and state that its contents are true and correct to the best of my knowledge and belief based upon my personal knowledge of the case and upon information obtained from other law enforcement personnel.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

This __26__ day of November 2020.

*Monika Staeva*
_____
MONIKA STAEVA
SPECIAL AGENT
FEDERAL BUREAU OF INVESTIGATION